ATHANASE RACHAL, Tutor, and another *v.* FELICE AIMEE RACHAL and husband.

Robinson
1 r 115
48  174
48  181

1 r 115
52 1195

1 r 115
50  606

Courts of ordinary jurisdiction, before which an action of revendication is brought, must of necessity pronounce on the validity of a will, under which the property sued for is held, either when the plaintiff attacks it, or the defendant sets it up as his title.

The proceedings in a court of probates for the settlement of an estate, such as the probate of a will, and the order for its execution, cannot be considered as a judgment binding on third persons not parties thereto.

Substitutions in favor of the grand children of the testator, or of the children of his brothers or sisters, are prohibited by the Code of this state.

Substitutions are prohibited by the Code, even when the provisions of the will do not tend to alter the course of descents; and whether conditional or unconditional.

The distinction between a disposition by which the usufruct is given to one, and the naked property to another, and a substitution, is that by the former the naked property vests immediately on the death of the testator, and must therefore be to some one *in esse*, capable at the time of receiving, and clearly designated by the will; while those who are to take under a substitution, may be unknown to the testator, or not in existence at the time of making the will.

A bequest of certain property, with a provision that the legatee shall not alienate any part under any pretext, and that in the event of her dying before her husband, it shall pass to her children, contemplates the children in existence at the time of her death, and bestows on them no rights whatever until that event, and will be considered a substitution, and void as such.

ATHANASE RACHAL, tutor of Olivier Rachal, and Melisse Anty, tutor of Sylvere Levasseur, obtained a judgment against the defendants before the District Court for the parish of Natchitoches, *Campbell*, J., from which the latter appealed. The opinion of the court contains an accurate statement of the facts of the case, and of the questions of law which arose on the trial.

*J. Taylor*, for the plaintiffs. The judgment of the District Court should be affirmed. The suit is for real property, and the district court alone has original jurisdiction. He cited, 10 Martin, 1. 7 Martin, N. S., 470. 2 La., 26. 11 Ib., 384, 394. 12 Ib., 214, 394. 17 Ib., 4. The will created a substitution, and was consequently void, and in support of this position, he referred to Civ. Code, 1507. 4 Martin, N. S., 45 *et seq*. 4 La., 505. 6 Ib., 235, 240. 13 Ib., 1. Toullier, Brussels ed. 1837, Nos. 36, 37, 42.

*Roysden,* for the defendants and appellants, urged that the judgment should be reversed : 1. Because no judgment of the court of probates homologating the proceedings of the family meeting convoked on the petition of Melisse Anty and authorizing him to sue, was produced, the judgment of the court as well as the advice of the family meeting being necessary. 2. Because the district court had no jurisdiction. 3. Because the judgment of the court of probates ordering the execution of the will was unreversed, no appeal having ever been taken from it, 5 La., 386, 395 ; and because that court had exclusive jurisdiction. Code of Pract., 608, 924. 8 Martin, N. S., 115, 520. 1 La., 19. 2 Ib.. 15. 6 Ib., 656. 4. Because the court erred in declaring that the will created a substitution. He contended that unless a will can be interpreted in no other manner, it shall not be said to create a substitution, 5 Martin, N. S., 304, 305. 7 lb., 417. 4 La., 504 ; and that no substitution is created unless an attempt be made to divert the property from the ordinary course of descents, which was not the case in the present instance. Civ. Code, 1509. 6 La. 246. 12 Ib., 483–5.

MORPHY, J. The plaintiffs, as the legal heirs and representatives of a brother and sister of the late Pedro Cyriac Levasseur, claim two thirds of the property left by their uncle, the whole of which is in the possession of the defendant, Felice Aimée Levasseur, another sister of the deceased, married to Emanuel Hilaire Rachal. They allege that the defendant, Felice, sets up title to and detains all the property by virtue of an olographic will which institutes her universal legatee, but which they aver is null and void as containing a substitution or *fidei commissum.* The defendant excepted to the jurisdiction of the district court, and denied that the will contained a substitution within the sense and meaning of the Civil Code. There was judgment below in favor of the plaintiffs, from which the defendants appealed.

We cannot consider the question of jurisdiction as an open one. The doctrine is now well settled that in a suit for property, whether the plaintiff attacks the will under which it is held, or the defendant sets it up as his title to the property claimed, the courts of ordinary jurisdiction, before whom the principal matter, to wit : the action of revendication is brought, must of necessity pronounce on the validity of the will which is thus drawn in question. The proceed-

ings had in the court of probates for the settlement of the estate, such as the probate of the will, and the order given for its execution, cannot have the effect contended for by the appellant; they cannot be considered as a judgment binding on the plaintiffs, who were not parties to them. 10 Martin, 1. 7 Martin, N. S., 470. 2 La., 26. 11 Id., 385 and 394. 12 Id., 214.

The only enquiry then in the present case is, whether the will of the late Pedro Cyriac Levasseur contains a substitution reprobated by our laws. This must depend on the terms of the will. After instituting the defendant for his universal heir, the testator says, '*en donnant et léguant à ma sœur Felice Aimée Levasseur, les biens qui m'appartiendront au jour de mon décès, je veux et ma volonté est positive qu'elle ne puisse les aliener d'aucune manière et sous quelque prétexte que ce soit; que si elle décède avant son mari, les dits biens passeront à ses enfans, tels qu'elle les aura reçus de moi, voulant que celui ou ceux qui seront tuteurs des dits enfans qui n'auraient pas atteint l'age de majorité, donnent bonne et valable caution pendant le tems qu'ils gereront ce qui appertiendra aux dits enfans mineurs.*' The Civil Code, art. 1507, provides that '*substitutions and fidei commissa* are and remain prohibited. Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person, is null, even with regard to the donee, the instituted heir, or the legatee.'

It is contended that this will contains no substitution; that the property is not given to be preserved and transmitted to persons different from those who would be called by law to inherit from the instituted person, which is the thing forbidden by law; and moreover that the disposition which is attacked must be considered as coming under art. 1509, which permits the naked property to be given to one individual and the usufruct to another.

The clause under consideration would be valid under the Code Napoleon, the provisions of which are less rigorous than ours on the subject of substitution. It contains an exception authorizing substitutions in favor of the grand-children of a testator, or the children of his brothers and sisters. C. N. arts. 1048 and 1049. It is well known that most of the provisions of the new, as well as of the old Code, were borrowed from the Code Napoleon, and the

presumption is, that the framers of the Code of this state would have expressly retained the exception, if such had been their intention. Instead of doing so, they have made the prohibition a general one, and we cannot make a distinction which is not to be found in the law. It is true that this provision of the will does not tend to alter the general order of descents, which is believed to be one of the grounds of the prohibition, but it is liable to another evil or inconvenience no less great, which is that it ties up property for a length of time in the hands of individuals, and places it out of the reach of commerce. In making the prohibition general as it is, the law-giver may have been governed by the opinion that a testator should not be permitted to control or regulate the transmission of his property beyond one life. From the terms of the will, the substitution appears to be subject to the condition that if the instituted heir shall die before her husband, the children shall take all the property such as their mother received it from him, and an express prohibition is imposed on her to sell any part of it under any pretence whatsoever. From this it might be inferred that if she survived her husband, she would be under no obligation to preserve for or return to her children the entire property; but admitting this substitution to be conditional, it is nevertheless embraced in the provision of our laws prohibiting substitutions; it does not distinguish between such as are made with conditions, and those that are unconditional; its disposition is general, and must be obeyed. Civ. Code 1507. 4 La. 505. 6 Id. 235. 4 Martin N. S. 45.

As to the position that in this case the usufruct of the estate was given to the mother and the naked property to her children, it appears to us untenable. The true distinction between such a disposition and a substitution we take to be this, that in the former the naked property vests immediately on the death of the testator; there must therefore be some one *in esse*, having capacity at that time to receive, and clearly designated by the will, whereas the persons who are to take under a substitution may be unknown to the testator, or may not be in existence at the time of the making of the will. If in the present case the testator had named the children living at the time he made his will, had instituted them his heirs, and had provided that after the death of their mother

they should take the property, it might perhaps have been difficult to distinguish such a disposition from that permitted by art. 1509 of the Code. But it is evident that the testator had in contemplation the children that might exist at the time of the death of his sister, and that they were to acquire no rights whatsoever until the happening of that event. Had they all died before their mother, they could not have transmitted any title in this property to their own heirs; whereas the person to whom the naked property in an estate is bequeathed, has a right transmissible to his heirs, who may become absolute owners by the death of the usufructuary. We must then consider this will as containing a real substitution.

*Judgment affirmed.*