## No. 9534.

### SUCCESSION OF JACOB STRAUSS.

A testamentary disposition by which the testator bequeaths all his property to his grand children, on condition that the legacy should remain under the administration of his testamentary executor until the legatees shall have reached the age of majority, does not create a *fidei commissum*, and has not the character of a condition which is impossible or reprobated by law. Under such a disposition the executor is not made a legatee with instruction to preserve for and turn over the property to another person.

A disposition whereby the testator bequeaths his whole property to his minor grand-children, on condition of their reaching the age of majority, but that in default thereof, the property shall pass to certain designated charitable institutions, is not amenable to the objection that it is a substitution as prohibited by the civil code.

That feature of a will presents a double institution of heirs depending upon a suspensive condition, but not a double testamentary disposition of the same property, first in favor of one person, and at his death to another person. In this case if the legacy ever vests in the grandchildren, it cannot never reach the asylums, under the effect of the will.

Legatees, whether of age or under age, cannot accept a testamentary succession in part or on conditions different from those imposed by the testator.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

*J. Q. A. Fellows* and *John Bassich, Jr.* for the Natural Tutor, Appellant:

1. The will of Jacob Strauss contained the following clauses: "I give all I may die possessed of to my grandchildren, Charles E. S. Cass and Isabella A. Cass. The giving to them to be conditioned on their attaining the age of majority. In case either of them die before attaining the age of majority, then the part or portion given as above conditioned to accrue to the survivor likewise conditioned on such survivor attaining the age of majority. The true intent being to make my said grandchildren my universal legatees upon condition that they reach majority. I desire that during the minority of my said grandchildren, the sum above given them conditionally be administered by my friend Judge E. D. White, of this city, without security. He to administer same for their benefit and pay over same to them on the happening of the conditions on which my gift is based. I expressly exact as a condition that none of the property be ever, in any way, during the minority, administered by their father. In the event of my said

grandchildren dying before reaching the age of majority, then I institute as my universal legatee the Jewish Widows and Orphans Asylum, the Little Sisters of the Poor, etc., "share and share alike."

Contended that the above will and its clauses is a prohibited substitution and *fidei commissa,* as such a nullity and must be considered as not written. And said will is further null because it divests the seizin given by law in favor of said minors, who are legal and forced heirs of their deceased grandfather's estate. Said will further imposing an illegal condition on their legitime. "The giving to them being conditioned on their attaining majority." Rev. Civil Code, Arts. 1519 and 1520; Domat Civil Law, Cushing edd., vol. 2, Art. 3823; Laurent, vol. 14, sec. 402, p. 440, *De la fiducie;* Clague vs. Clague, 13 Lou., O. S., p. 1.

"A disposition by will, in which the property of the estate is to remain in the hands of the executors, until the testator's children or heirs arrive at the age of majority, cannot be distinguished from one that would authorize the executors to keep it and preserve it for and return the estate to them, which is a *fidei commissa,* or trust, and is forbidden by law." Succession Foucher, 30 La. An., p. 1017; Succession Cochrane, 29 An., p. 235; Succession Will. Steven, 36 An., p. 755.

"Whenever the disposition is made in such terms as necessarily to comprehend a charge to keep for and transmit to a third person. it contains a substitution, although not litterally expressed. In every substitution or *fidei commissa* the agency of three persons is required, viz: the donor or testator, the person who receives for a certain time and the one to whom is bound to transmit it. Farrar vs. Cutchon, 4 Mar., N. S. p. 48; Arnaud vs. Torbe, 4 Lou., p. 502; Harper vs. Stanbrough, 2 Lou. An. p. 377.

Code Napoleon, article 896, corresponding with article 1507 of our Rev. Civil Code, prohibits substitutions only, while our Code prohibits *fidei commissa* also. Any disposition *mortis causa* or *inter vivos,* by which a person is requested to preserve for and return a certain thing to another person is null, being a *fidei commissa.* the charge *de rendre* appears to be the distinctive characteristic of the *fidei commissa.* The prohibition of the Code is so general that no particular class of *fidei commissa* is excepted from it. Ducloslange vs. Ross. 3 An., p. 433; 5 Toullier, p. 28, 30 An., pp. 1020, 1021; 1 Rob. p. 117.

Those who lend their names to *fidei commissa* are viewed, in all cases, as spoliators, and so far from being bound to return the property placed in their hands to the incapable legatee, they contract no other obligation than to restore it to the heirs at law, with the fruits and interests accrued even before demand. "Badillo vs. Tio, 6 An., p. 129 and 136, citing Domat and other authorities.

The nomination by the grandfather in his will of a tutor to his minor grandchildren legatees, (or an executor or special administrator to administer the legacy) to the prejudice of their surviving father and mother, is illegal and the disposition null and must be reputed as not written: 10 La. An, p. 169, Hoggatt vs. Moraucy; Succession Foucher, 30 An., pp. 1020–1; Laurent, sec. 403, pp. 441, 442; Rev. Civil Code, 250, 253, 256, 257; 13 La., 1; 10 An., p. 169, and 12 An., p 767. '

When the testament of a grandfather, in favor of his minor grandchildren, is a *fidei commissa* or substitution and null as such, the grandchildren being legal heirs *ad intestatio* (no one having a greater right) are entitled not only to their legitime but to the grandfather's entire estate, the same to be at once delivered over to their father, their natural tutor, to be administered for their benefit as above shown. Rev. Civil Code, articles 886, 887, 940 and 941; Chabot des Successions, vol. 1, pp. 52 and 53; Marcadé Code Civil, vol. 3, p. 33; Rogron Code Civil, p. 150, art. 724; 15 An., Perin vs. McMicken, p. 158.

The legitime goes to the forced heirs by operation of law, unaffected by any restrictions, modifications or conditions imposed by the ancestor, and dispositions imposing such restrictions modifications or conditions must be reputed as not written. Rev Civil Code.

articles 1710, 1493 to 1501 and 1687; Rogron C. Civil, art. 915, p. 192; Laurent, vol. 12 pp. 197–199, sec. 149; Demolombe des Donations, vol. 2, p. 38; Merlin Question, Verbo Legitime, vol. 17, p. 150, sec. 7; 13 Lou., O. S., p. 9, and Succession of John Turnell, 32 La., p. 1218; 3 Mar. 485.

*Nicholls & Carroll* for the Executor, Appellee.

The opinion of the Court was delivered by

POCHÉ, J. The controversy presented by the pleadings in this case involves the question of the validity of the olographic will of the late Jacob Strauss, which is of the following tenor:

" This is my last will and testament, entirely written, dated and signed by me, New Orleans, September 20, 1882:

"I give all I may die possessed of to my two grandchildren, Charles Edward Stanislaus Cass and Isabella Amanda Cass, the children of my deceased daughter, Marie Louise Cass. The giving to them to be conditioned on their attaining the age of majority. In case either of them die before attaining the age of majority, then the part or portion given as above conditioned to accrue to the survivor, likewise conditioned on such survivor attaining the age of majority. The true intent being to make my said grandchildren my universal legatees upon the condition that they reach majority. I desire that during the minority of my said grandchildren, the sum above given them conditionally be administered by my friend, Judge E. D. White, of this city— without security—he to invest said amount in good securities and apply the proceeds to the education and support of said grandchildren. He is to administer the same for the benefit of said grandchildren, and pay over the same to them on the happening of the conditions on which my gift to them is based. I expressly exact as a condition that none of the property given by me to my grandchildren be ever, in any way, during their minority, administered by their father. In the event of my said grandchildren dying before the happening of the condition by me above mentioned—that is, they or either of them reaching the age of majority, then I institute as my universal legatee the Touro Infirmary, the Jewish Widows and Orphans' Asylum, the Little Sisters of the Poor, the St. Mary's Catholic Orphan Asylum— share and share alike to each of said institutions. I institute and appoint Judge E. D. White my testamentary executor, with seizin and without security. This entirely written, dated and signed by me at New Orleans, this 20th September, 1882."

J. STRAUSS.

The nullity of the will is propounded by C. L. C. Cass, the father and natural tutor of the two grandchildren of the deceased appellant herein on substantially the following grounds:

1. That the will contains a *fidei commissum* and a substitution, which are both prohibited by our laws.

2. That it divests the minors of the seizin of one-third of their grandfather's estate, to which they are entitled under the law as forced heirs.

## I.

The charge of a *fidei commissum* refers to that disposition in the will which subjects the property of the testator to the administration of the testamentary executor until the minors' legatee shall have reached the age of majority.

Under the provisions of our code, a *fidei commissum* is understood to be " a disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person." C. C. 1520.

Now under the terms of this will, the executor is neither a donee, an heir or a legatee. No part of the property of the testator is bequeathed to him, to be preserved for or turned over to another person or succeeding legatee, and it is clear that no right of ownership, either in trust or otherwise, is intended to be vested in him. The only power or right with which he is clothed by the will is one of administration, and under the circumstances it partakes more of the character of an onerous duty than of an enviable right. The practical effect of that feature of the will is to vest the usufruct or right of enjoyment of the testator's estate in his grandchildren, subject to the executor's administration, until they shall have reached the age of majority, and bequeath to them the naked ownership of the same at the time that they shall reach that age. C. C. art 1522.

Such a disposition is not amenable to the reprobation of our law.

The identical question came up and was exhaustively considered by our immediate predecessors in the case of the succession of Macias, 31 Ann. 127. That precise condition was found in the will of Mrs. Macias, and the court held that it was not impossible or reprobated by law. We therefore hold that the will of Jacob Strauss, is not invalidated by reason of that condition.

But it is charged that the disposition by which the testator bequeaths the whole of his property to one of his grandchildren in case of the death of the other before the latter reaches the age of majority, and by which he directs that his property shall pass in equal shares to four designated charitable institutions, in case both of the minors should die before they have reached their respective ages of majority, contains a forbidden substitution.

As we have already shown, it appears from a consideration of the will, that it bequeaths no part of the testator's property in full owner-ship to his grandchildren before they reach the age of majority.

If that condition does not happen, the property of the testator passes. at once and in full ownership to the designated asylums. But in case that both minors, or one of them, shall reach the age of majority, the· condition under which the asylums could become legatees under the will does not happen, and from that moment their connection with the· will is forever severed.

The testator does not pretend to make two testamentary disposi-tions of the same property, by making it descend as a legacy to one person, and at the death of that legatee, to pass it to a subsequent legatee, independently of the will power of the first legatee, or of the existence of forced heirs to his succession.

It follows therefore that that feature of the will cannot be assimi-lated to the prohibited substitution referred to in our code.

These views have always prevailed in the jurisprudence of France,. from whose code we have derived the provision of our own code on this subject. Code Civil, art 896; Marcadé, vol. 3, p. 364 *et seq.*

The Court of Cassation and other French tribunals have uniformly and correctly ruled that a double institution of heirs, depending upon a suspensive condition, which is the case with the will in hand, does. not present the features of a prohibited substitution Its essential characteristic is that both of the instituted heirs should in turn, and under the effect of the will, become the absolute owners of the prop-erty, or that one should succeed the other as legatee of the same thing,. under the expressed will and directions of the testator. Journal du Palais, 1885, p. 520, Gildan vs. Phillippon.

## II.

We shall now consider the objection to the will on the ground that. it imposes illegal conditions on the legitimate portion of the forced heirs. At the threshold of that inquiry we are confronted with the following provisions of our code:

Article 986: "He who has the power of accepting the entire succes-sion cannot divide and only accept a part."

Article 1016: "A succession can neither be accepted nor rejected conditionally."

It is conceded that the testator's grandchildren have no forced legal claim to more than one-third of his estate. and that he had the perfect. legal option to dispose by will of the remaining two-thirds of his es-tate to another or different person. Hence in the case of a will by

their grandfather, they had no absolute legal right to that portion of his estate.

It is equally clear that he could legally impose any condition; provided it was not impossible or reprobated by law on any person whom he selected as the object of his bounty for that proportion of his estate.

Now in commenting on these provisions of law, which apply as well to testamentary as to intestate successions, (C. C. 975) this Court used the following language in the Succession of Macias:

"A conditional legacy—when the conditions imposed by the testator are neither impossible nor reprobated by law—must and can be accepted by or for the legatee but in accordance with the terms of the will. Whether of age or under age, the legatee cannot be allowed to divide his acceptance to take the donation and repudiate the conditions on which it was made, or take it on conditions which differ from those fixed by the donor. He must accept it as it is or reject it."

Following in the same train of thought on the same subject, the present court, in the succession of Turnell, 32 Ann. 1218, said:

"We think it clear, on both reason and authority, that where the will bequeaths to the forced heir more than his legitimate portion, the testator may attach to the bequest any lawful conditions, and in such case the forced heir must exercise the option of either accepting the bequest as a whole, with the conditions attached, or renouncing all testamentary advantage and claiming his legitime only as secured to him by the law independent of the testament."

Having shown hereinabove that the conditions attached to his bequest by Strauss were neither impossible or reprobated by law, it follows that the will must either be accepted in whole or renounced entirely. The conditions imposed by the testator were not intended and must not be construed as imposed on the legitimate portion of his forced heirs, but for the balance of the estate which he would doubtless have disposed of to the exclusion of his grandchildren, had he for a moment supposed that they could have obtained it independently of his will and of the conditions which he attached thereto.

If these grandchildren were of age and were in court in their own right they could not claim one portion of the estate as forced heirs, and the remainder as beneficiaries under the will. The law would compel them to elect whether they would as forced heirs take their legitime without conditions, or accept the whole estate under the conditions imposed by the testator. But their tutor, who now acts in

their behalf, has no authority to exercise that option, the law elects for them to accept the most advantageous position in their behalf.

Hence we have no other alternative but to enforce the execution of the will as a whole and all in its parts. These were the conclusions reached by the district judge, his decree must therefore be sustained..

Judgment affirmed.